Circumstantial evidence held not sufficient to authorize conviction of unlawful possession of intoxicating liquor.
 DECIDED OCTOBER 2, 1940.
 STATEMENT OF FACTS BY MacINTYRE, J.
Sheriff Mac C. Abercrombie, a witness for the State, testified: "I am sheriff of Douglas County, and as such sheriff investigated the premises of Joe Summerville on or about December 20, 1938. Joe Summerville lived in Douglas County on the old Bankhead highway just out of Villa Rica. The farm is known as the old Nalley place. His nearest neighbors lived about one-fourth mile away. We went to his house just before dinner time. I found *Page 293 
Joe and his wife and either his brother or brother-in-law at home. Joe and his wife live in the house, and we had a search warrant and examined the premises. We found two or three empty one gallon square containers that had had liquor in them. They were empty. From the back porch there was a track leading down across a little corn-patch into the edge of the woods. I found three and one-half gallons of whisky in one-gallon tin cans. No Georgia State revenue stamps were affixed. It was just old wold [?] brand liquor. It was intoxicating, distilled whisky. It was about ninety one steps from his back door. Tracks led down to where the liquor was at. They were a man's tracks. We found a gallon can full of liquor about sixty steps from the front door on the west side of the house. No Georgia revenue stamps were attached to it. It was distilled liquor. The house is the residence of Joe Summerville. Both places where the liquor was found were in Douglas County. I examined the ground at the other points. Yes, sir, the only track was leading from the house to the liquor. There was not any traffic going in any other direction." On cross-examination the sheriff testified: "Joe Summerville had been living in that house some time. I don't know for sure who had been living in that house before Joe moved in. I have heard of Lawrence Kimbell. He made a crop there, but he had been moved some time. Five or six weeks. We never made a search while Kimbell lived there. Lawrence Kimbell pled guilty to selling liquor. I don't know whether Kimbell left any of his things in the house. We watched Kimbell while he lived there. Never saw a thing. Watched him go towards the barn. The brother or brother-in-law was about twenty years old, I would say. The house faces south; faces the old highway. We found the gallon can kind of west from the house. The road runs east and west. We found the three and one-half gallons back of the house, about northwest. One was closer to the road than the other." Another witness for the State testified: "We did save the liquor. We don't have any of it now. We brought it home and poured it out." Also, that there were footprints all around the house in the patch; that the three and one-half gallons were at the end of a trail; that it was used a good deal; that there was a boy in the house, who looked to be eighteen or twenty years of age; and that he was the brother of the defendant or the defendant's wife's brother. "Joe Summerville *Page 294 
said he worked in Villa Rica. At the point where we found the three and one-half gallons of liquor I noticed signs of wood having been recently cut; limbs were piled, a good many stumps were there, all kinds of wood had been cut. The brush was pretty fresh."
In his statement to the jury the defendant said: "That morning Mac and this other fellow came up there I was on the side of the house, cutting stove wood, and my wife was cooking. We worked on the night shift at Villa Rica. Mr. Abercrombie said he had a search warrant. I said go ahead. I went with him into the house. He found the empty cans in the left room. There were no windows in this room. Lawrence Kimbell had left an old safe in there and piles of junk. He opened up the cans, and they smelled like liquor had been in them. The room where my brother sleeps is next to the room where the cans were. Mr. Abercrombie asked me what was that in bed. I told him it was my brother. Later I heard Mr. Abercrombie throw something down in the front yard. It was some cans. He said he found it in the woods. We stepped it from where he said he found it. It was 362 steps. He said, `You are stepping mighty long steps.' There was plenty of pine straw on the ground; you couldn't see any tracks in the woods. We toted from down there. The ground was plumb dry. Lawrence Kimbell hadn't been moved but about two weeks. I told Mr. Abercrombie to look in the field where he found the gallon can, for my tracks. He looked and didn't find any. I didn't have anything at all to do with the liquor. Me and my wife both worked. I didn't have anything but the house. Lawrence made a crop there last year. I wasn't in possession of anything but the house. The trail leads to the spring too. We didn't have a well. I told Mac that morning it looked like water in the cans. He said he would have it analyzed. My brother was staying there. He is twenty-one years old, going on twenty-two. He had his own room in the other side of the house, and he stayed there with me, and we had two cars. We kept the cars under the shelter. It is a long shelter, big enough for two cars. Even if there had been tracks from the house, as many times as we drove the cars across the yard it would have spoiled them out. I was not in possession of anything but the house. I was not even supposed to cut wood. We had been cutting dead wood. Lawrence Kimbell had a watermelon patch and garden on the west side of the house. The trail was a *Page 295 
beat trail. I tried to get them to show me tracks, and he couldn't find fresh tracks. I didn't have anything to do with it."
It might be noted that there were two cars in the yard or shelter, and that the defendant's brother or brother-in-law was asleep in his bedroom in the house, and that the defendant stated that he lived with him and worked in Villa Rica. It also appears that a man had lived there only five or six weeks before, and the defendant had lived there for only about two weeks when the search was made. It appears that that man had pled guilty to selling liquor, and that the liquor so found was not in the house or in any enclosure but was in the woods, and the defendant had rented only the house.
Joe Summerville was convicted of the offense of misdemeanor, for that he did "have, control, and possess certain alcoholic and prohibited liquors on which the Georgia State revenue stamps had not been affixed and in excess of one quart." His motion for new trial based solely on the general grounds was overruled, and he excepted. The evidence connecting the defendant with the offense charged was not sufficient to exclude every reasonable hypothesis except that of his guilt. It follows that his conviction was unauthorized, and that the overruling of his motion for new trial was error.
Judgment reversed Broyles, C. J., and Gardner, J.,concur.